IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| WILLIAM IRVING, ) | | |
| Register No. 182906, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | No. 04-4309-CV-C-SOW | |
| ) | | |
| DAVE DORMIRE, et al., ) | | |
| ) | | |
| Defendants. ) | | |

**ORDER AND SUPPLEMENTAL REPORT AND RECOMMENDATION**

Plaintiff, an inmate confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

On April 12, 2005, following a telephone conference with the parties on April 6, 2005, the undersigned recommended that plaintiff's motion for preliminary injunctive relief be denied as moot. Plaintiff subsequently filed numerous documents, which will be treated as additional requests for preliminary injunctive relief.

A hearing was held on June 1, 2005, on plaintiff's additional requests for preliminary injunctive relief. Plaintiff appeared in person and by counsel, as did defendants.

Plaintiff alleges that his life has been threatened and continues to be threatened by Jefferson City Correctional Center (JCCC) defendants (most specifically defendant C.O. Brigance), and therefore, plaintiff requests a transfer to a different penal institution.

The federal courts have broad power to grant or deny equitable relief in a civil rights action. *Holt v. Sarver*, 442 F.2d 304 (8th Cir. 1971). A "large degree of discretion is vested in the trial court" in determining whether an injunction should issue. *American Home Investment Co. v. Bedel*, 525 F.2d 1022, 1023 (8th Cir. 1975), *cited with approval in Rittmiller v. Blex Oil, Inc.*, 624 F.2d 857 (8th Cir. 1980). *See also Cole v. Benson*, 760 F.2d 226 (8th Cir. 1985), *cert. denied*, 474 U.S. 921 (1985). In *Dataphase Systems, Inc. v. C.L. Systems, Inc.*,

640 F.2d 109 (8th Cir. 1981), the court delineated the factors to be considered in ruling a motion for preliminary injunctive relief.

> Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the plaintiff; (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest.

*Id.* at 113. Further, "[t]he dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently-existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1981) (quoting *Holiday Inns of America, Inc. v. B. & B. Corp.*, 409 F.2d 614, 618 (3d Cir. 1969)). Thus, the inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. The burden of proof is on the party seeking injunctive relief. *United States v. Dorgan*, 522 F.2d 969, 973 (8th Cir. 1975).

Additionally, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington,* 42 F.3d 470 (8th Cir. 1994).

In support of his claim for preliminary injunctive relief, plaintiff testified at the hearing on his own behalf and called several inmate witnesses whose testimony supported his allegations that defendant Brigance had made threatening statements to him and had solicited other inmates to injure him.

Defendants called Department of Corrections (DOC) staff witnesses Cressey, Brigance, Neff, Cassidy and Connell, who testified that Brigance never threatened plaintiff and never solicited inmates to injure him.

For purposes of determining whether preliminary injunctive relief is proper, the court need not decide the issue of whether Brigance had made threats against plaintiff or solicited inmates to injure him. Rather, the court need only make a determination whether plaintiff is in danger of harm. Determination of the truth of plaintiff's allegations can be addressed during the normal processing of this case. The court notes, however, that a transcript of the

2

hearing is being forwarded to the United States Attorney for review with regard to possible federal law violations.

Upon consideration of the evidence submitted to the court, as well as the credibility of the witnesses who testified, the court finds there is no real danger of harm to plaintiff from defendant Brigance or other guards, either directly, or indirectly from other inmates.

The court finds that even if the threats were made by defendant Brigance, or other DOC defendants, there is no real danger that such personnel would carry out threats to injure or kill plaintiff. The probability that defendants would personally injure plaintiff is very remote. Defendants, who are all DOC personnel, are aware that the court has been put on notice of plaintiff's allegations, and such defendants are not going to jeopardize their careers and lives by injuring or killing plaintiff.

The court further finds that to the extent plaintiff alleges he is in danger from inmates who might be solicited by defendants to harm him, plaintiff's safety is within his personal control. If plaintiff is concerned about his safety when in the company of other inmates, he has the ability to put himself in protective custody by using established prison procedures. In this regard, the court notes that in recent weeks, plaintiff has signed enemy waivers so that he could be housed in the less restrictive Level III administrative segregation status, which allows him to have more contact with other inmates. This suggests to the court that plaintiff does not believe he is in danger from other inmates. In fact, plaintiff has signed an enemy waiver even as to the very inmate (Hessler) whom he alleges defendants solicited to harm or kill him with a razor blade.

As to the razor blade incident, in which plaintiff alleges that inmate Hessler was solicited by defendants to harm him, the court finds that plaintiff's account of the incident is not credible. The court finds that the incident more likely occurred as recounted by DOC officers, who testified at the hearing. Although inmate Hessler was found to have an unauthorized razor in his cell, the credible evidence is that at the time, plaintiff did not believe he was in danger as a result of Hessler having the razor. Rather, the credible evidence is that when plaintiff became aware that inmate Hessler had a razor in his cell, plaintiff stated he thought it unfair that Hessler was allowed a razor in his cell to shave and that plaintiff wanted to be allowed to do the same. The court notes that defendant Brigance,

3

who had apparently negligently allowed inmate Hessler to have a razor while he was in his cell, was disciplined for his actions, and that Hessler had the razor for less than one hour.

The court finds that the credibility of DOC personnel who testified at the hearing outweighed the testimony offered by plaintiff and the other inmates who testified on plaintiff's behalf. The court notes that the inmates who testified on plaintiff's behalf were all inmates residing in a maximum security administrative segregation unit, within a maximum security prison. Based upon the credible evidence presented at the hearing, the court finds that plaintiff is in no real danger and that plaintiff's allegations are being made to obtain a transfer from JCCC.

On June 16, 2005, plaintiff filed a motion to supplement the hearing record with two additional affidavits from prisoners at Algoa Correctional Center, which state that, on one occasion, all the cell doors opened in the C-wing, resulting in plaintiff being assaulted by another prisoner. Defendants have filed a motion to strike plaintiff's motion, arguing that such affidavits are hearsay and cumulative. Plaintiff has filed a reply. Upon consideration, the court will grant plaintiff's motion. Despite the fact that the affidavits are hearsay, there does not appear to be a dispute as to the facts asserted. The credible evidence presented at the hearing established that on one or more occasions, during the early stages of the occupation of the new JCCC, the cell doors in the C-wing were all popped open due to inadvertent error. Such error was explained as occurring when correctional officers accidentally hit the wrong button on the control panel which opened cell doors. The credible evidence is that such risk of error by corrections staff has been eliminated by a cover which was placed over the button to prevent accidental striking. Thus, the court finds that the concerns with regard to cell doors being popped open are moot, and plaintiff's supplement to the record does not change this court's finding that plaintiff is in no real danger of harm.

Based on the foregoing and on this court's recommendation of April 12, 2005, it is

ORDERED that plaintiff's motion to supplement the hearing record is granted [65]. It is further

RECOMMENDED that plaintiff's requests for preliminary injunctive relief be denied [18, 27, 28, 32, 33, 34].

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within ten days. If additional time is needed, a motion for an extension of time must be filed within ten days. The motion should state the reasons for the request. *See Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986) (citing *Thomas v. Arn*, 474 U.S. 140 (1985)); *Messimer v. Lockhart*, 702 F.2d 729 (8th Cir. 1983). Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 14th day of July, 2005, at Jefferson City, Missouri.

/s/

WILLIAM A. KNOX
United States Magistrate Judge